UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                             :

ALEX RUDAJ, NIKOLA DEDAJ, NARDINO   :
COLOTTI, PRENKA IVEZAJ, and ANGELO  :     04cr1110 (DLC)
DIPIETRO,                            :     11cv1782 (DLC)
                                  :     11cv1510 (DLC)
                  Petitioners,  :     11cv1402 (DLC)
                                :     11cv1556 (DLC)
          -v-                 :     20cv4889 (DLC)
                                :

UNITED STATES OF AMERICA,        :    <u>OPINION AND ORDER</u>
                                :

                  Respondent.  :
                                :
-------------------------------------- X

APPEARANCES

For petitioner Alex Rudaj:
David E. Patton
Federal Defenders of New York, Inc.
52 Duane Street
10th Floor
New York, NY 10007

For petitioner Nikola Dedaj:
Edward S. Zas
Federal Defenders of New York, Inc.
52 Duane Street
10th Floor
New York, NY 10007

For petitioner Nardino Colotti:
Eunice C. Lee
Federal Defenders of New York, Inc.
52 Duane Street
10th Floor
New York, NY 10007

For petitioner Prenka Ivezaj:
Michael S. Schachter
Ravi Chanderraj
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

For petitioner Angelo DiPietro:
Anthony DiPietro
Law Office of Anthony DiPietro, P.C.
15 Chester Avenue
White Plains, NY 10601

For respondent United States of America:
Andrew Jones
Lara Pomerantz
Jonathan Rebold
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

DENISE COTE, District Judge:

Alex Rudaj, Nikola Dedaj, Nardino Colotti, Prenka Ivezaj, and Angelo DiPietro ("Petitioners") seek a writ of habeas corpus pursuant to Title 28, United States Code, Section 2255. Petitioners were convicted at trial on multiple counts, including of participating in a RICO enterprise. In this petition, they seek to vacate their convictions on the count that charged them with using and carrying a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c). They contend principally that their convictions for that crime are no longer valid in the wake of the Supreme Court's decisions in United States v. Davis, 139 S.Ct. 2319 (2019), and Johnson v. United States, 576 U.S. 591 (2015). For the following reasons, the petition is denied.

**Background**

Following a fifteen-week jury trial, Petitioners were each convicted on multiple counts of crimes arising from their involvement in the Rudaj Organization, an organized crime syndicate that, among other things, controlled illegal gambling operations in the New York City area.  The evidence at trial included multiple acts of violence and threatened violence committed in the operation of the Rudaj Organization and to expand the territory the Rudaj Organization controlled.

Fifteen counts were submitted to the jury and the jury convicted each Petitioner of all but one of those counts.[1]  Of relevance to this petition, Petitioners were charged in Count One of the indictment with racketeering in violation of 18 U.S.C. § 1962(c),[2] and in Count Thirteen of the indictment with

---

[1] While the final superseding indictment returned by the grand jury contained twenty-one counts, only fifteen were submitted to the jury.  No Petitioner was charged with all fifteen counts. Rudaj was charged with thirteen counts and convicted of twelve; DiPietro and Colotti were both charged with ten counts and convicted of nine; and Dedaj and Ivezaj were both charged with nine counts and convicted of eight.  All Petitioners were charged in Count Four of the indictment with assaulting Mikhail Hirakis in aid of racketeering, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2, but the jury did not convict them on that count.

[2] Count One of the indictment, in relevant part, charges that the Rudaj Organization "was an organized criminal group . . . that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the

using, carrying, and brandishing firearms during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).[3]  An indictment charging a violation of § 924(c) must state a predicate crime of violence giving rise to the § 924(c) charge, and the sole predicate crime of violence charged in Count Thirteen was the RICO offense charged in Count One of the indictment.

In order to secure a RICO conviction, the Government must prove beyond a reasonable doubt that the defendant engaged in a pattern of racketeering activity by committing two or more underlying racketeering acts.  In this case, the indictment charged fourteen distinct racketeering acts,[4] and the jury

─────────────

objectives of the enterprise" and that Petitioners "were members and associates of the enterprise, the Rudaj Organization, and participated in the operation and management of the enterprise." The indictment further charges that Petitioners "unlawfully, willfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5)" through the commission of fourteen distinct racketeering acts.

[3] Count Thirteen, in relevant part, charges that the Petitioners "unlawfully, willfully and knowingly did use and carry firearms, which firearms were brandished, during and in relation to crimes of violence for which they may be prosecuted in a court of the United States, and did possess firearms in furtherance of such crimes, to wit, the racketeering charge contained in Count One of this Indictment."

[4] While the indictment charged fourteen racketeering acts, no Petitioner was charged with all fourteen acts.  Rudaj was

convicted each Petitioner of either each of the racketeering acts in which he was named or all but one of those acts.[5]

Relevantly here, each Petitioner was charged with one or two acts of extortion in violation of N.Y. Penal Law §§ 155.05 and 155.40 ("state law extortion").  All Petitioners were charged with state law extortion based on an assault on patrons and managers of an illegal gambling club called Soccer Fever (the "Soccer Fever incident"), and Petitioners Rudaj, Dedaj, Ivezaj, and DiPietro (but not Petitioner Colotti) were charged with state law extortion based on an assault on Antonios Balampanis (the "Dimopoulos-Balampanis incident").

In connection with these two predicate acts of extortion, the jury was instructed that:

> In order for you to find the defendant you are considering guilty of extortion, as charged in [the Dimopoulos-Balampanis incident and the Soccer Fever Incident], the government must prove beyond a reasonable doubt each of the following elements:
>
> First, that the defendant obtained property from another person with that victim's consent; second, that the defendant knowingly and willfully induced

---

charged with ten acts, Colotti and Dedaj were each charged with six acts, and Ivezaj and DiPietro were each charged with five acts.

[5] The jury found that Rudaj had committed nine of the ten racketeering acts with which he was charged and found that Colotti had committed five of the six racketeering acts with which he was charged.  The other Petitioners were found to have committed all racketeering acts with which they were charged.

such consent by instilling in the victim a fear that
the defendant or a third person would cause physical
injury to some person in the future, or cause damage
to property.

The jury convicted each Petitioner of the Count One RICO
charge.  In a special verdict regarding the indictment's
racketeering acts for Count One, the jury also found that all
Petitioners had committed state law extortion in the Soccer
Fever incident, and that four of the five Petitioners (all
except for Colotti, who was not charged with this racketeering
act) had committed state law extortion in the Dimopoulos-
Balampanis incident.

The jury was also instructed that it could convict each
Petitioner of violating § 924(c) if the Government proved that:

First, the [Petitioner] committed the [Count One RICO
offense].

Second, that the [Petitioner] you are considering
knowingly used or carried a firearm during and
relation to the [Count One RICO offense], or possessed
a firearm in furtherance of the [Count One RICO
offense] on one of the following occasions.  You must
be in unanimous agreement about the occasion on which
the defendant acted in this way in order to convict
that defendant.

Here are the various occasions:

In June 2001, the [Petitioners] Rudaj, Dedaj, Ivezaj,
. . . and DiPietro are charged with using or carrying
a firearm in connection with the victims Fotios
Dimopoulos and Antonios Balampanis.

In August 2001 the [Petitioners] Rudaj, Colotti,
Dedaj, Ivezaj . . . and DiPietro are charged with the

same offense in connection with the Soccer Fever
victims.

The jury was further instructed that, if it concluded that
a Petitioner was guilty of violating § 924(c), it must also
consider whether the Petitioner brandished a firearm during that
violation.  The jury was told that

> if you find that the [Petitioner] you are considering
> is guilty of the crime charged in Count 13, you must
> also determine if on that occasion the [Petitioner]
> brandished a firearm.
>
> To 'brandish' a firearm means to display all or part
> of it, or to otherwise make its presence known to
> another person in order to intimidate or advise that
> person that violence is imminently and immediately
> available, regardless of whether the firearm is
> directly visible.  You must be in unanimous agreement
> as to the occasion on which the [Petitioner]
> brandished the firearm.

The jury convicted each Petitioner of violating § 924(c) and
found that each Petitioner brandished a firearm during his
violation.

With the exception of Petitioner DiPietro, each Petitioner
was sentenced to 84 months of imprisonment on the § 924(c)
conviction, to be served consecutively to their other terms of
imprisonment.[6]  DiPietro was sentenced to serve 300 months of

---

[6] A sentence of 84 months is the mandatory minimum sentence for a
conviction for violating § 924(c) that involves brandishing a
firearm.  18 U.S.C. § 924(c)(1)(A)(ii).  The sentences imposed
on the other counts of conviction were imposed to run
concurrently.  The Petitioners' sentences on those counts ranged
in length from 180 to 240 months' imprisonment to reflect the

imprisonment on his § 924(c) conviction, to be served
consecutively to a term of imprisonment imposed in another
criminal case.[7]  Petitioners then appealed their convictions and
sentences.  The United States Court of Appeals for the Second
Circuit affirmed.  United States v. Ivezaj, 568 F.3d 88 (2d Cir.
2009); United States v. Ivezaj, 336 F.Appx. 6 (2d Cir. 2009).

In 2011, Petitioners moved for writs of habeas corpus
pursuant to 28 U.S.C. § 2255.  This Court largely denied their
petitions, except for an ineffective assistance of counsel claim
by Petitioners Colotti, Dedaj, and Ivezaj, and declined to issue
a certificate of appealability.  Colotti v. United States, 2011
WL 6778475 (S.D.N.Y. Dec. 21, 2011).  After an evidentiary
hearing, the remaining ineffective assistance of counsel claim

---

Court's evaluation of their role in the Rudaj Organization's
crimes and other pertinent information.

[7] DiPietro had been previously convicted of violating § 924(c),
so he was subject to a mandatory minimum sentence of 300 months
on his second § 924(c) conviction.  18 U.S.C. § 924(c)(1)(C).
That earlier § 924(c) conviction has been vacated, with the
Government's consent, pursuant to Davis.  As a result, the
Government and DiPietro agree that even if the Government
prevails in this petition, DiPietro must be resentenced here to
a consecutive term of imprisonment of 84 months rather than 300
months.  DiPietro is still serving an underlying sentence of 324
months' imprisonment imposed for that prior conviction.  This
Court's underlying sentence of DiPietro of 210 months'
imprisonment was imposed to run concurrently with that sentence
of 324 months.

was denied, as well.  Id., 2012 WL 1122972 (S.D.N.Y. Apr. 4, 2012).

In 2016, Petitioners moved in the Second Circuit for permission to bring second or successive motions for writs of habeas corpus under § 2255.  Petitioners reasoned that their § 924(c) convictions must be vacated because the § 924(c) convictions were predicated on the RICO convictions.  The Petitioners contended that their RICO convictions no longer qualified as valid predicate "crime[s] of violence" because they only qualified as crimes of violence under the so-called "residual clause" of 18 U.S.C. § 924(c)(3)(B), and that the residual clause was unconstitutionally vague following the United States Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015).

The Second Circuit granted the Government's motion to stay decision on the Petitioners' motions pending the Second Circuit's decisions in United States v. Hill, No. 14-3872 or United States v. Barrett, No. 14-2641.  In 2018, the Second Circuit issued its decision in Barrett, holding that the residual clause was not unconstitutionally vague.  United States v. Barrett, 903 F.3d 166, 184 (2d Cir. 2018).  But in 2019, the Supreme Court held the residual clause unconstitutionally vague in United States v. Davis, 139 S.Ct. 2319 (2019).

Following Davis, the Second Circuit granted the
Petitioners' motions to file second or successive § 2255
petitions challenging their § 924(c) convictions.  On October
19, 2020, Petitioners moved to vacate their § 924(c) convictions
in this Court.  Their motions became fully submitted on January
29, 2021.

## Discussion

Petitioners have moved for post-conviction relief under
Title 28, United States Code, Section 2255.  In order to secure
relief via a motion under § 2255, a petitioner must show that
there was "constitutional error, a lack of jurisdiction in the
sentencing court, or an error of law or fact that constitutes a
fundamental defect which inherently results in complete
miscarriage of justice."  Graziano v. United States, 83 F.3d
587, 590 (2d Cir. 1996) (citation omitted).  "[T]he burden of
proof is on the party seeking relief."  Galviz Zapata v. United
States, 431 F.3d 395, 399 (2d Cir. 2005) (citation omitted).
Section 2255 review is "narrowly limited in order to preserve
the finality of criminal sentences and to effect the efficient
allocation of judicial resources."  United States v. Hoskins,
905 F.3d 97, 102 (2d Cir. 2018) (citation omitted).

Title 18, United States Code, Section 924(c)(1)(A)
prohibits "during and in relation to any crime of violence . . .

10

us[ing] or carr[ying] . . . or . . . possess[ing] a firearm."

Title 18, United States Code, Section 924(c)(3) defines a "crime

of violence" as "an offense that is a felony" and:

> (A) has as an element the use, attempted use, or
> threatened use of physical force against the
> person or property of another, or
> (B) that by its nature, involves a substantial
> risk that physical force against the person or
> property of another may be used in the course of
> committing the offense.

The first subpart of § 924(c)(3) is commonly called the

"elements clause," and the second subpart is commonly called the

"residual clause."  United States v. Davis, 139 S.Ct. 2319, 2324

(2019).[8]

The constitutionality of the residual clause of § 924(c)(3)

has been extensively litigated.  In 2015, the Supreme Court

struck down a similar residual clause in the Armed Career

Criminal Act, 18 U.S.C. § 924(e)(2)(B), reasoning that the

residual clause was unconstitutionally vague.  Johnson v. United

States, 576 U.S. 591 (2015).  Subsequently, the Supreme Court

applied Johnson to strike down the similarly worded residual

clause of § 924(c)(3) as unconstitutionally vague, as well.

Davis, 139 S.Ct. at 2323-24.

---

[8] Some courts have also referred to the elements clause as the
"force clause."  See, e.g., United States v. Moore, 916 F.3d
231, 236 (2d Cir. 2019).

Since the residual clause has been invalidated, the predicate crime of violence required to sustain a conviction under § 924(c) must be a crime of violence as defined by the elements clause, § 924(c)(3)(A).  In order to determine whether a potential predicate offense is a crime of violence under the elements clause, courts are instructed to use a categorical approach.  United States v. Barrett, 937 F.3d 126, 128 (2d Cir. 2019).  "Under the categorical approach, courts identify the minimum criminal conduct necessary for conviction under a particular statute.  In so doing, they look only to the statutory definitions -- i.e., the elements -- of the offense, and not to the particular underlying facts."  United States v. Thrower, 914 F.3d 770, 774 (2d Cir. 2019) (citation omitted).  A state criminal offense may serve as a predicate crime of violence only if it categorically requires proof of the elements listed in the elements clause.

While the categorical approach is sufficient in many contexts, some statutes "have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder."  Mathis v. United States, 136 S.Ct. 2243, 2249 (2016).  Divisible statutes are defined as those that "list elements in

the alternative, and thereby define multiple crimes." Id.[9]  To
address so-called divisible statutes, the Supreme Court
"approved the 'modified categorical approach.'"  Id.  Under the
modified categorical approach, "a [district] court looks to a
limited class of documents (for example, the indictment, jury
instructions, or plea agreement and colloquy) to determine what
crime, with what elements, a defendant was convicted of.  The
court can then compare that crime, as the categorical approach
commands, with the relevant generic offense."  Id. (citation
omitted).  This modified categorical approach is used only for
divisible statutes: use of the modified categorical approach is
inappropriate for statutes that merely list "alternative means
of fulfilling" an element of the crime.  Id. at 2253.

     With this background in mind, this Opinion now addresses
the four principal disputes between the parties.  These disputes
are whether a substantive RICO count may constitute a crime of
violence, whether the modified categorical approach may be
applied to New York's extortion statute, whether at least one of
the RICO predicate acts of extortion at issue here constitutes a
crime of violence, and whether a single predicate act that is a

---

[9] In Mathis, the Supreme Court provided, as an example of a
divisible statute, one that "prohibited 'the lawful entry or the
unlawful entry' of a premises with intent to steal, so as to
create two different offenses, one more serious than the other."
136 S.Ct. at 2249.

crime of violence renders a substantive RICO count a crime of violence.  Each of these questions is answered in the affirmative.

I.    A Substantive RICO Charge May Constitute a Crime of Violence.

In this case, Petitioners' substantive RICO convictions on Count One, for violations of Title 18, United States Code, Section 1962(c), serve as the predicate for Petitioners' § 924(c) convictions.  Section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce" from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  A "racketeering activity" is defined as one of a number of enumerated state or federal crimes, 18 U.S.C. § 1961(1), and a "pattern of racketeering activity" is defined as "at least two acts of racketeering activity," 18 U.S.C. § 1961(5).

The Second Circuit has previously held, on Petitioners' direct appeal from their convictions at trial, that "[b]ecause racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity," a court must "look to the predicate offenses to determine whether a crime of violence is charged" for the purpose of determining whether a RICO

14

conviction can serve as a predicate offense for a § 924(c) conviction. United States v. Ivezaj, 568 F.3d 88, 96 (2d Cir. 2009). Thus, "where the government proves (1) the commission of at least two acts of racketeering and (2) at least two of those acts qualify as crimes of violence under § 924(c), a § 1962 conviction serves as a predicate for a conviction under § 924(c)." Id. (citation omitted).

Petitioners argue that, after Davis, a conviction for a substantive violation of the RICO statute may not serve as a predicate crime of violence under the elements clause because RICO is not categorically a crime of violence. This argument is unavailing. In Ivezaj, the Second Circuit essentially applied a variant of the modified categorical approach to conclude that § 1962(c) could qualify as a predicate for a § 924(c) conviction. The Second Circuit held that, to determine whether a RICO violation could qualify as a predicate, courts should look through the elements of § 1962(c) itself to the underlying racketeering acts and determine whether those predicate racketeering acts qualify as crimes of violence. In the years since Ivezaj, the Supreme Court has reaffirmed the use of the modified categorical approach in certain circumstances. See, e.g., Mathis, 136 S.Ct. at 2249.

15

Davis does not provide a basis to deviate from the Ivezaj variant of the modified categorical approach here.  After Davis, a predicate racketeering act to a RICO conviction must be a "crime of violence" pursuant to the elements clause of § 924(c)(3)(A) for that RICO conviction to sustain a § 924(c) conviction.  Even after Davis, the "clear message" of Ivezaj is "that whether a substantive RICO offense is or is not a crime of violence is determined by the nature of the predicate offenses constituting the charged pattern of racketeering."  United States v. Martinez, ___ F.3d ___, 2021 WL 968815, at *8 (2d Cir. Mar. 16, 2021).[10]  See also United States v. Brown, 945 F.3d 72, 76 (2d Cir. 2019) (concluding that there is "no persuasive reason to deviate" from Ivezaj after Davis in the related context of calculating a Guidelines sentence for a RICO conspiracy conviction).

Since Petitioners' RICO convictions can properly serve as predicate crimes of violence for their § 924(c) convictions if a predicate racketeering act for their RICO conviction on Count

---

[10] In its recent decision in Martinez, the Second Circuit noted that the question of whether Ivezaj was "wrongly decided based on current Supreme Court case law" is "by no means clear or obvious."  2021 WL 968815, at *8 (citation omitted).  But neither the Second Circuit nor the Supreme Court has overturned or abrogated Ivezaj, and this Court is therefore bound to follow it.

One is a crime of violence, the relevant question becomes whether any of the racketeering acts underlying Petitioners' RICO convictions qualify as crimes of violence.

The parties agree that most of the racketeering acts that the jury found proven at trial no longer qualify as "crime[s] of violence" in the wake of Davis, meaning that those predicate acts cannot support the Petitioners' § 924(c) convictions.[11]  The Government contends, however, that two predicate acts -- which charged Petitioners with state law extortion for the Dimopoulos-Balampanis incident and the Soccer Fever incident -- can continue to support the conclusion that the RICO convictions are for crimes of violence, and by extension support the § 924(c) convictions.

II.  New York's Extortion Statute is Analyzed under the Modified
     Categorical Approach.

The Petitioners argue that the special verdict on the racketeering acts finding state law extortion violations cannot support a § 924(c) conviction.  The parties principally dispute in this portion of their argument whether New York's extortion statute may be analyzed under the modified categorical approach.

---

[11] Those racketeering acts were charged as federal extortion, in violation of 18 U.S.C. § 1951; federal extortionate debt collection, in violation of 18 U.S.C. § 894; and federal extortionate extension of credit, in violation of 18 U.S.C. § 892.

New York law defines extortion as a form of larceny that occurs when a person

> compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:
>
>> (i) Cause physical injury to some person in the future; or
>>
>> (ii) Cause damage to property; or
>>
>> (iii) Engage in other conduct constituting a crime; or
>>
>> (iv) Accuse some person of a crime or cause criminal charges to be instituted against him; or
>>
>> (v) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule; or
>>
>> (vi) Cause a strike, boycott or other collective labor group action injurious to some person's business; except that such a threat shall not be deemed extortion when the property is demanded or received for the benefit of the group in whose interest the actor purports to act; or
>>
>> (vii) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or
>>
>> (viii) Use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely; or

(ix) Perform any other act which would not
in itself materially benefit the actor but
which is calculated to harm another person
materially with respect to his health,
safety, business, calling, career, financial
condition, reputation or personal
relationships.

N.Y. Penal Law § 155.05(2)(e).

Under New York law, extortion committed by "instilling in
the victim a fear that the actor or another person will (a)
cause physical injury to some person in the future, or (b) cause
damage to property, or (c) use or abuse his position as a public
servant" is defined as grand larceny in the second degree.  N.Y.
Penal Law § 155.40(2).  The other forms of extortion described
in § 155.05(2)(e) are defined as grand larceny in the fourth
degree.  N.Y. Penal Law § 155.30(6).

The Government acknowledges that some of the means of
committing extortion under § 155.05(2)(e) do not qualify as
crimes of violence under the elements clause, but argues that
the statute is divisible, allowing for the application of the
modified categorical approach to determine the elements of the
offense of conviction.  If the modified categorical approach
applies, and the relevant documents indicate that the
Petitioners were convicted of extortion because they used or
threatened the use of physical force to instill fear in their
victims that they would cause physical injury or property

damage, the RICO convictions on Count One can serve as
predicates for the § 924(c) convictions, because the New York
extortion offense would qualify as a crime of violence.

The Petitioners contend that the New York extortion statute
is not divisible under the Supreme Court's approach to
divisibility in Mathis, requiring the application of the
categorical approach to assess whether the New York extortion
offenses qualify as a crime of violence.  If the categorical
approach applies, the New York extortion offenses necessarily
cannot qualify as crimes of violence for the purposes of the
elements clause, because New York extortion can be committed
either by threats to use physical force or by other means that
do not qualify as a crime of violence, such as accusing a person
of a crime.

The New York extortion statute is divisible.  Section
155.05(2)(e) describes multiple elements in the alternative,
each separated by the conjunction "or".  The Second Circuit has
held that New York criminal statutes with this structure are
divisible.  See, e.g., United States v. Scott, ___ F.3d ___,
2021 WL 786632, at *1 n.1 (2d Cir. Mar 2, 2021) (en banc) (New
York first-degree manslaughter statute, consisting of three
alternative elements separated by "or", is divisible); United
States v. Jones, 878 F.3d 10, 16-17 (2d Cir. 2017) (New York

first-degree robbery statute with a similar structure is
divisible); Flores v. Holder, 779 F.3d 159, 166 (2d Cir. 2015)
(New York first-degree sexual abuse statute with a similar
structure is divisible).  The same result is compelled here.

Moreover, the relationship between the definitions of the
prohibited acts in § 155.05(2)(e) and the definitions of second-
and fourth-degree grand larceny in §§ 155.30(6) and 155.40(2)
confirms that § 155.05(2)(e) is divisible.  Some of the defined
acts in § 155.05(2)(e) create liability for second-degree grand
larceny, while others create liability for fourth-degree grand
larceny.  If the defined acts in § 155.05(2)(e) were merely
alternative means of fulfilling the elements of extortion,
rather than elements of multiple distinct crimes, it would not
be the case that some of the defined acts give rise to criminal
liability under § 155.30(6), while others give rise to criminal
liability under § 155.40(2).  Accordingly, the New York
extortion statute is divisible.

Since the New York extortion statute is divisible, it is
appropriate to use the modified categorical approach and look to
a limited set of documents to "determine what crime, with what
elements, a defendant was convicted of."  Mathis, 136 S.Ct. at
2249.  Here, the Court will look to the indictment, the jury
instructions, and the jury's verdict form, all of which are

21

documents that the Supreme Court or the Second Circuit has held appropriate for consideration in applying the modified categorical approach.  See id.; Flores, 779 F.3d at 163 n.2.

III. Each Petitioner Committed at Least One RICO Predicate Act that Qualifies as a Crime of Violence.

In this case, viewing the indictment, jury instructions and the jury's verdict form holistically, the modified categorical approach indicates that the jury necessarily convicted each Petitioner of a crime of violence, that is, through finding that on at least one occasion he committed extortion through the use, attempted use, or threatened use of physical force.  The indictment charged that each of the two predicate acts of state law extortion was a violation of New York Penal Law Sections 155.05 and 155.40 and was committed by the Petitioners wrongfully taking or attempting to take the property of another "by means of extortion, by instilling in [the victims] a fear that the defendants would damage property and cause physical injury to some person in the future."

The jury instructions on the two predicate acts charging state law extortion informed the jury that it could only convict a Petitioner if it found that the Petitioner had committed extortion by "instilling in the victim a fear that the defendant or a third person would cause physical injury to some person in the future, or cause damage to property."  The instructions on

22

both racketeering acts, therefore, required the jury to determine whether the Government had proven that the Petitioner acted to instill fear of physical injury or property damage.

Count 13 of the indictment confirms that the jury found that at least one of these two predicate acts involved the use or threatened use of physical force.  Count 13 charged Petitioners Rudaj, Dedaj, Ivezaj, and DiPietro with brandishing a firearm during the Dimopoulos-Balampanis incident, and charged Petitioners Rudaj, Dedaj, Ivezaj, Colotti, and DiPietro with brandishing a firearm during the Soccer Fever incident.[12]  The jury was instructed that "brandishing" is defined as "display[ing]" a firearm "in order to intimidate or advise [a]

---

[12] The jury was charged that in order to find the Petitioner it was considering guilty of the crime charged in Count 13, the Government had to prove that the Petitioner knowingly used or carried a firearm during and in relation to the crime charged in Count 1, or possessed a firearm in furtherance of the crime charged in Count 1 on one of the occasions listed in the indictment.  Those occasions included the Dimopoulos-Balampanis and Soccer Fever incidents, which were each identified in the jury charge.  The jury was instructed that it had to be unanimous with respect to the occasion on which it believed the person used, carried or possessed the firearm.  Only if the jury found a Petitioner guilty did it next have to determine whether the Government had proven that the Petitioner brandished a firearm on that specific occasion.  The jury was again instructed that it had to be unanimous.  There was no special verdict taken on the brandishing charge, so the jury was not required to find on which occasion the brandishing occurred, or whether the brandishing occurred during one or both of the charged acts of state law extortion.

person that violence is imminently and immediately available."
The jury convicted each Petitioner on the brandishing charge,
thereby finding unanimously that each Petitioner had brandished
a firearm during at least one of the incidents of state law
extortion.

Viewing the indictment, jury instructions and the jury's
verdict as a whole, then, the documents indicate that
Petitioners' RICO convictions were predicated on findings that
they had, on at least one occasion, committed state law
extortion by instilling fear through the threatened use of
physical force against either the victim's person or against
their property, indeed by instilling fear that that use of
physical force was imminently and immediately available.[13]

---

[13] The Petitioners note that New York courts have held that a
defendant can commit state law extortion by instilling "[f]ear
of future economic harm" to property, rather than by instilling
fear of physical force against property.  See People v.
Capparelli, 603 N.Y.S.2d 99, 105 (Sup. Ct. N.Y. Co. 1993)
(citing People v. Diogardi, 8 N.Y.2d 260, 269 (1960)).  Under
the categorical approach, a state law extortion conviction
premised on instilling fear of damage to property would not
qualify as a crime of violence under the elements clause,
because a hypothetical defendant could instill fear of future
economic harm without "the use, attempted use, or threatened use
of physical force against the . . . property of another."  But
because the extortion statute is divisible, the modified
categorical approach applies.  Applying the modified categorical
approach, the brandishing finding on Count 13 allows for a
conclusion that the jury found that any threat of damage to
property involved a threatened use of physical force against the
victims' property, rather than a threat of economic harm to

Therefore, Petitioners' RICO convictions on Count One are predicated on findings that they each committed at least one predicate act that itself qualifies as a crime of violence.

This conclusion also defeats Petitioners' contention that the § 924(c) convictions cannot stand because the jury instructions allowed the jury to find that a Petitioner committed the RICO predicate acts of state law extortion if it found either that the Petitioner committed a completed extortion, that the Petitioner attempted to commit extortion, or that the Petitioner conspired to commit extortion.  As an initial matter, any distinction in the jury instructions between extortion and attempted extortion is irrelevant.  The jury instructions on attempt also stated that the Government was required to prove that the petitioner "attempted to instill fear in the victim," and given the jury's verdict on the brandishing charge, the jury found that any such attempt involved the display of a firearm to intimidate or advise a person that violence is imminently and immediately available.  Under the elements clause of § 924(c), a crime involving either the "attempted use [or] threatened use of physical force"

_____

their property.  A threat to use physical force against property constitutes a crime of violence under the elements clause.

constitutes a crime of violence.  18 U.S.C. § 924(c)(3)(A).  A
completed instance of state law extortion is not necessary.

In any event, allowing the jury to find a Petitioner guilty
of a predicate act of state law extortion if it unanimously
found any one of three modes of liability -- that the Petitioner
was guilty of conspiracy to extort, an attempt to extort, or the
substantive act of extortion -- is not an impediment to
upholding the Petitioners' § 924(c) conviction.  This is true
even though a conspiracy to commit an act of violence is not a
crime of violence for purposes of § 924(c).  See Barrett, 937
F.3d at 127-29.  The jury was properly instructed on a
substantive extortion theory of liability, and here "the jury
would have necessarily found the defendants guilty on one of the
properly instructed theories of liability."  United States v.
Ferguson, 676 F.3d 260, 277 (2d Cir. 2011); see also Vilar v.
United States, 2020 WL 85505, at *3 (S.D.N.Y. Jan. 3, 2020)
(concluding that a court need not "assume that the jury based
its § 924(c) conviction on [an invalid] conspiracy predicate"
where the jury was properly instructed on another, valid
predicate).  Because of its convictions of Petitioners on Count
Thirteen for brandishing a firearm, the jury necessarily found
them guilty of the substantive crime of extortion.

IV.  A Single Predicate Act is Sufficient to Render the
     Substantive RICO Count a Crime of Violence.

     For the reasons just explained, the jury found that each

Petitioner committed at least one predicate act of state law

extortion qualifying as a crime of violence.  Because a general

verdict was taken on the brandishing count, it is not possible

to know whether the jury found that the Petitioners other than

Colotti were each convicted of two distinct acts of extortion

qualifying as crimes of violence or only one.[14]  Relying on the

Second Circuit's statement in Ivezaj that at least two

underlying racketeering acts must qualify as crimes of violence

under § 924(c) for a RICO conviction to serve as a valid §

924(c) predicate, Petitioners argue that a § 924(c) conviction

premised on a RICO conviction based on only a single predicate

crime of violence must be vacated.

     This contention may be rejected.  The Second Circuit wrote

in Ivezaj that the substantive crime of RICO is a crime of

violence only where at least two RICO predicates qualify as

crimes of violence.  568 F.3d 88 at 96.  But the Second Circuit

recently held that its pronouncement in Ivezaj was dicta because

Ivezaj was not a case in which the Second Circuit "had to decide

---

[14] Because Colotti was not charged with participating in the
Dimopoulos-Balampanis incident, he was necessarily convicted of
only one act of state law extortion qualifying as a crime of
violence for his role in the Soccer Fever incident.

whether a RICO pattern in which the jury found . . . only one predicate that was a violent crime would be properly considered a crime of violence for purposes of § 924(c)."  <u>Martinez</u>, 2021 WL 968815, at *6.  Thus, it is an "open issue" in the Second Circuit "whether a RICO charge," such as Petitioners' RICO charge in Count One, "that is based on one violent predicate and one or more non-violent predicates" is a crime of violence.  <u>Id</u>. Indeed, the Second Circuit noted in <u>Martinez</u> that <u>Ivezaj</u> "arguably supports a conclusion that a RICO offense predicated on a pattern of racketeering that included one crime of violence would be a crime of violence" because, under the elements clause, only one element of the offense need involve violence for the offense to qualify as a crime of violence under § 924(c).  <u>Id</u>.  Accordingly, Petitioners have not shown that they are entitled to relief under § 2255.

## **Conclusion**

The October 19, 2020 petition for § 2255 relief is denied.

But since the issues raised by Petitioners are those "that

reasonable jurists could debate," <u>Miller-El v. Cockrell</u>, 537

U.S. 322, 336 (2003), a certificate of appealability is granted.

The Clerk of Court is directed to enter judgment and close this

case.

Dated:   New York, New York
         March 29, 2021

```
                              _____
                                  Denise Cote
                                  DENISE COTE
                          United States District Judge
```